SCHILLING *v.* DARMODY.

*(Jackson.* May 8, 1899.)

1. HUSBAND AND WIFE. *Intermarriage extinguishes pre-existing debt.*

The intermarriage of a man with a woman to whom he has loaned money, evidenced by a note and secured by a trust deed of her real estate, extinguishes the debt and also the mortgage, as a matter of law. (*Post, pp. 440–448.*)

Cases cited: Joiner *v.* Franklin, 12 Lea, 422; Cox *v.* Scott, 9 Bax., 305; Bennett *v.* Read, 4 Heis., 440; McCampbell *v.* McCampbell, 2 Lea, 661; Castellar *v.* Simmons, 1 Tenn. Cas., 65.

2. MORTGAGES AND DEEDS OF TRUST. *Title revests in mortgagor on satisfaction of secured debt.*

On payment or satisfaction of a debt secured by mortgage, the title to the property therein conveyed revests in the mortgagor without a reconveyance. (*Post, pp. 448, 449.*)

Cases cited and approved: Hannum *v.* Wallace, 4 Hum., 143; Ross *v.* Young, 5 Sneed, 627; Carter *v.* Taylor, 3 Head, 30.

3. SAME. *Heir not required to pay off, when.*

The heir of a woman who gave a note and trust deed upon land to secure an indebtedness to one to whom she was afterwards married is not required, under the equitable maxim, "He who seeks equity must do equity," when he seeks the removal of a trust deed as a cloud upon the title to the lands, to pay the amount of the debt which the deed was executed to secure. (*Post, p. 449.*)

4. SUPREME COURT. *Will not remand for proof, when.*

The appellate Court may not remand a cause without a final disposition thereof on the merits, on the ground that full proof of the facts and circumstances were not made and to enable the making of such proof in the Court below, when the case does not fall under Shannon's Code, § 4905, because the applicant has had full opportunity to establish such facts if they

existed, and the failure to do so must be imputed to inability or negligence upon the trial in the lower Court. (*Post, pp. 449, 450.*)

Code construed: § 4905 (S.); § —— (M. & V.); § —— (T. & S.).

FROM SHELBY.

Appeal from Chancery Court of Shelby County. Jno. L. T. Sneed, Ch.

H. C. Warinner for Schilling.

Jas. H. Malone, R. Lee Bartels, and W. B. Glisson for Darmody.

Wilkes, J. This is a bill to enjoin the foreclosure of a deed of trust, and have the same set aside as a cloud upon complainant's title upon certain real estate, and to have the debt secured originally by said trust deed declared satisfied and extinguished. The Chancellor granted the relief prayed, and defendant has brought the record before us for examination, upon writ of error.

It appears that Henrietta Schilling, while a widow, borrowed from defendant, Darmody, $1,700, for which she executed her note to him. She also executed a deed of trust upon her house and lot, to secure this note, to W. B. Glisson, trustee. This was in April, 1886. Mrs. Schilling was then keeping a boarding house in Memphis, and defendant

and his family were boarding with her. Afterward they intermarried. There was no marriage contract or agreement fixing the property rights of either after marriage. In 1894 Mrs. Darmody (nee Schilling) died intestate, leaving complainant as her only heir, and defendant, her late husband, became her administrator. Defendant demanded of complainant payment of the note, which was refused, and he thereupon proceeded to foreclose the deed of trust, when he was enjoined by the bill in this case. The claim made in the bill is, in short, that the marriage of the parties operated by law as an extinguishment and satisfaction of the debt. The defendant by answer denies that such was the legal result of the marriage, and states that the parties continued to treat and regard the note and mortgage as existing obligations after as before the marriage. There was no cross bill. No proof was taken except an agreement in lieu of proof that after the marriage the wife obtained a loan upon this real estate from a building and loan association, and executed to it a deed of trust, in which the property was represented and warranted to be unincumbered, and as the property of the wife. The husband and wife joined in executing this mortgage, and there was a provision that, in case of sale to pay the debt, the surplus should go to Mrs. Darmody. The deed of trust from Mrs. Schilling to her subsequent husband was not registered until after her death.

It is insisted the Court erred in holding that the

note had been satisfied by the marriage of the parties, and that it should not have directed its cancellation and the satisfaction and setting aside of the trust deed without at the same time requiring the amount due defendant to be repaid him, as evidenced by the note and trust deed. ·

It is conceded that at common law the marriage of the mortgagor to the mortgagee would operate as a satisfaction of the mortgage debt and discharge and release of the trust. But it is insisted that the rules of common law have, by statute, in Tennessee, been changed in many respects, and, while there is no statute directly bearing on this point, yet the trend of legislation and judicial decision is in the direction of emancipation of married women and placing them upon the basis of *femes sole*. It may be granted that this is true so far as legislation extends, and it may also be granted that the Courts have recognized these innovations upon the common law and enforced them when authorized, but the Courts have not gone beyond the legislation and laid down any rules in regard to the property rights of married women not authorized by statute, on the idea that such rules are in accord with the general trend of legislation. The Courts have followed the legislation, but have not gone ahead of it, and, unless the rules of the common law have been expressly changed by statute, they are in full force in Tennessee. *Joiner* v. *Franklin*, 12 Lea, 422; *Cox* v. *Scott*, 9 Bax., 305.

Schilling *v.* Darmody.

It is highly possible that legislation, in its process of emancipating women by statute, may succeed in making her the equal of man in every respect, notwithstanding she has always been his superior, but the Courts can only follow, and not lead, in this experiment, and these rules in regard to married women apply in Courts of Equity as well as in Courts of Law. Courts of Equity have, however, always recognized certain rights of married women and enforced them even where they are not recognized in Courts of Law, such as the right of the wife to a settlement out of her personal estate as against her husband or his creditors and her marriage contracts with her intended husband and contracts with regard to her separate estate.

Mr. Story, in his work on Equity Jurisprudence, Vol. 2, Sec. 1370, says: "By the general rules of law the contracts between husband and wife before marriage, become, by their matrimonial union, utterly extinguished. Thus, for example, if a man should give a bond to his wife, or a wife to her husband, before marriage, the contract thereby created would, at law, be discharged by the intermarriage. Courts of Equity, though they generally follow the same doctrine, will, in special cases, in furtherance of the manifest intentions or objects of the parties, carry into effect such a contract made before marriage between husband and wife, although it would be avoided at law." As, for illustration, "An agreement made between husband and wife before mar-

riage, for a settlement of their separate estates, will be enforced in equity, though void at law, for equity will not suffer the intentions of the parties to be defeated by the very act (marriage) which is designed to give effect to such contract." See *Bennett* v. *Read*, 4 Heis., 440; *McCampbell* v. *McCampbell*, 2 Lea, 661; *Castellar* v. *Simmons*, 1 Tenn. Cas., 65.

But in these and similar cases the contracts and agreements are enforced because the parties intended them to remain and be in force notwithstanding the marital relation, and so provided by express agreement. In the present case, no feature of that kind exists. The loan and trust deed were not made, so far as the record shows, in contemplation of marriage, and there was no agreement that the debt should continue in force after the marriage, and the parties made no provision by contract to change the legal effect of the marriage union.

In Indiana, where the rights of married women are very much the same as in Tennessee, the almost exact question here presented was elaborately considered in the case of *Long* v. *Kinney*, 49 Ind., p. 235. The facts are as follows: On January 8, 1872, Eliza McCabe, a single woman, executed a mortgage on real estate to Michael Kinney, to secure the payment, at maturity, of a promissory note made by said Eliza McCabe, payable to said Michael Kinney. Some time after the execution of the note and mortgage, Eliza McCabe and Michael Kinney intermar-

ried. After the marriage, Michael Kinney trans-
ferred the note and mortgage to one Long. Long
brought suit against Kinney and his wife, and sought
to foreclose the mortgage. The wife insisted that
by her marriage to Kinney the note and mortgage
were dissolved and discharged. The syllabus of the
case is: ''An unmarried woman, executed a note and
mortgage on her real estate to secure its payment,
and afterwards married the payee of the note, the
mortgagee, after the marriage, assigned the mort-
gage and delivered the note to a third person, who
brought suit to foreclose the mortgage.''

It was held, in substance, that by the marriage
the debt and mortgage were discharged and the
action could not be maintained. This case goes
fully into the whole question, showing that the rule
at common law was well established, and could not
be changed except by express statutory enactments,
and that, although under the statutes of Indiana
declaring that both her real and personal property
should remain her own, after marriage as before,
there was ''no statute which attempts to save the
right of action of the husband against the wife on
contracts entered into by her before the marriage.''
Authorities were cited, and it was shown that the
case presented did not fall within the exceptions
allowed in Courts of Equity, which exceptions relate
to marriage contracts and the like, the performance
of which is intended to take place after marriage.
The Court cites as authorities: 1 Blackstone's Com.,

442; 1 Kent's Com., 129; Story's Eq. Jur., Secs.
1367 and 1370. To the same effect, see *Barnet* v.
*Harshberger*, 105 Ind., 410; *Henegar* v. *Lomas*, 145
Ind., 287; Cord on Mar. Women, Sec. 154, p. 82;
Reeves Dom. Rel., 167, star p. 2; Reeves Dom.
Rel., 53, star p. 2; and cases cited above from
Tennessee Reports. A case in apparent conflict is
that of *Powers* v. *Lester*, 23 N. Y., 527. The
syllabus is: "The marriage of a female mortgagee
with the mortgagor, since the act for protection of
married women (Ch. 200 of 1848), does not extin-
guish her rights of action on the mortgage.

"Where such mortgagee unites with her husband
in a junior mortgage of the same land, the act
affects only her inchoate dower interest, but does
not, in the absence of words for that purpose, im-
pair her right to priority of lien."

The facts were: That a suit was instituted to
foreclose a mortgage bearing date April 1, 1861,
executed by Melvin Power to plaintiff, upon certain
land, to secure a bond of $951.92, due April 1,
1855. Melvin Power (mortgagor) married the
plaintiff, the creditor and mortgagee, in the year
1852. After marriage, and in 1856, Mrs. Lester,
the plaintiff, united with her husband in another
mortgage embracing, with the land in the previous
mortgage, a large amount of other lands, to secure
to Lester her husband's bond for $60,000. This
mortgage by no words purported to affect the wife's
separate estate, and no words indicated that it was

to operate on her mortgage. Lester foreclosed the mortgage in his favor, and at the sale bought in all the lands embraced in the mortgage to him, but the rights of the wife in the lands mortgaged to her were reserved in the foreclosure decree. She filed her bill against Lester to establish her prior right, and it was held that there was still due her $1,516.98, and the usual decree was pronounced in her favor, and Lester appealed.

The Court of Appeals fully recognized the rule of unity at common law and its legal effect, but adverted to the fact that the common law rule had been changed by statute in New York (1848, 1849). That statute declares "that the property of any female who shall thereafter marry, and which she shall own at the time of the marriage, shall continue her separate estate, as if she were a single woman," and that this was an express change in the common law rule, which left no doubt for construction. In that case the female creditor afterwards became the wife of the debtor, and as the statute expressly and plainly reserved her rights in the property she owned at the time of her marriage, this debt and mortgage, which were her personalty, were reserved to her by the plain statute, in derogation of the common law rule, which would have extinguished her claim. It is probable that in New York no such legislation exists, changing the common law rule as to the effect of the marriage upon the husband's rights, when he occupies the

status of creditor. At all events, that case is wholly different from the one at bar, and is based upon a plain, positive, express statutory provision. No such statute exists in Tennessee. The husband, as before, takes the wife's personalty as at common law, subject alone to the right of her creditors. Under a statute in New York the unity of persons which disabled the . wife from suing her husband, has also been repealed. Code N. Y., § 114. And so in *Butler* v. *Ives,* 139 Mass., 202, and *Wright* v. *Wright,* 54 N. Y., 437, it was held that the note remained in force, notwithstanding the marriage, but this was by virtue of the special statutes of Massachusetts and New York changing the common law rule as to the effect and result of a marriage.

If we are correct in holding that the note was satisfied and discharged by the result and by virtue of the marriage, there remains but little more to be considered in the case. The trust deed provides upon its face that if the note shall be paid, the deed shall be satisfied and quitclaimed according to law.

It has been repeatedly held that on payment of a mortgage or trust debt by the debtor, the estate of the mortgagee or trustee ceases and the legal title revests in the mortgagor or grantor *ipso facto,* without a reconveyance. This upon the idea that a trustee takes only such title and estate as is required for his trust. *Hannum* v. *Wallace,* 4 Hum.,

143; *Ross* v. *Young*, 5 Sneed, 627; *Carter* v. *Taylor*, 3 Head, 30.

The doctrine invoked that a party who seeks the aid of a Court of Equity must first do equity, and that the Court will not remove a cloud upon a title and decree a cancellation of a deed and a revestiture of title except on condition that the debt which the deed was executed to secure be paid, is not applicable in this case, for the debt is paid and the mortgage is satisfied, in our view of the case, and complainant is entitled to have it so declared when an attempt to enforce it is made, as is done in this case.

The title having revested in the mother of the complainant by the satisfaction of the note, descended to him upon her death, as there was no child by her marriage with Darmody, and, being the heir, he is entitled to have the cloud removed therefrom.

It is insisted that the Court, in any event, should remand the cause, without a final disposition on the merits, to the Court below, to the end that full proof may be made of circumstances and facts to show that the parties intended to keep the debt in force after the marriage as before. This insistence was made in the answer, and it must be presumed that if there was such proof or circumstances from which such intention could be inferred, it would have been shown. The case does not fall within

18 P—29

Schilling *v.* Darmody.

the provisions of the statute (Shannon, § 4905), be-
cause defendant has had full opportunity to establish
such facts if they existed, and the failure to do so
must be imputed either to · inability so to do or
negligence in not doing so in the Court below.

The decree of the Court below is affirmed with
cost.