L. E. RUGG *v.* NASH-ECHOFF MOTOR COMPANY.

(*Jackson,* April Term, 1930.)

Opinion filed June 28, 1930.

S. W. Polk, for complainant, appellee.

Winchester, Knapp & Bearman, for defendant, appellant.

Mr. Justice McKinney delivered the opinion of the Court.

By the bill complainant seeks a decree for $600, the proceeds from the sale of a secondhand Nash automobile which he alleges defendant sold for him without accounting therefor.

Defendant filed a cross-bill in which it alleged that by a contract in writing it sold to complainant a new Ambassador Nash sedan for $2165, less $600 for the old car; that it had tendered the new car, was ready, able and will-

ing to deliver it; and asked that a decree be entered in its favor for the difference, or $1565. The answer of the cross-bill contains this averment, to-wit:

"That he denies that he ever instructed cross-complainant to apply the proceeds from the sale of cross-defendant's car on a new Nash car; and states that the facts to be that his signature and that of his wife on the alleged order or contract for a new Nash car which complainant makes the basis of his cross-bill were procured by material false representations made for the purpose and calculated to deceive cross-defendant and his wife, and which in fact did deceive them; and that as soon as cross-defendant and his wife discovered that they had been deceived in signing said alleged order cross-defendant notified cross-complainant that he rescinded and would not be bound by said alleged order."

Upon the issue thus made both parties took proof as to the alleged fraud and false representations by which the written contract was obtained.

The chancellor held (a) that the averments in the answer as to false representations were insufficient to base a decree upon, and (b) that the evidence did support the charge of false representations.

The Court of Appeals reversed the chancellor, holding (1) that the allegations of false representations in the answer were sufficient to make an issue, and (2) that the evidence sustained the averment of false representations. That court further found that cross-complainant sold the old car for $550, was entitled to $35 for selling same, and entered a decree against it and in favor of complainant for $515, with interest from the date the bill was filed.

The writ of *certiorari* has heretofore been granted and the cause argued before this court.

■ Cross-complainant accepted the issue of fraud tendered by the answer, directed its proof to that issue, and offered no objection or exception to the evidence introduced by complainant upon that question. It thereby waived the invalidity of the answer as a defense to the cross-bill. *Brown* v. *Brown*, 159 Tenn., 554.

■ One of the reasons for testing pleadings is to enable the pleader to cure any defect by amendment.

In Gibson's Suits in Chancery (Chambliss ed.), page 86, it is said:

"If one party was allowed to ignore a slip, defect, or other error or omission of his adversary, in pleading, proof or procedure, until after the time or opportunity for supplying the deficiency or curing of the error had elapsed, it would not only often defeat the real justice of the case on its merits, or delay the trial by requiring the Court to continue the hearing in order to give due opportunity to supply the deficiency or cure the error, but it would also enable crafty parties to lie in ambush, as it were, and strike their opponents unawares, and in their back, after they had passed the point when attention should have been called to the error; and this, too, in a Court consecrated to good faith and fair play.

"Hence it is, that if a party fail to object to some slip, omission, defect or other error, in pleading, proof or procedure, at the proper time and in the proper manner, he will be deemed to have waived his right to make such objection; and this is especially true if after such right of objection accrued, he himself, instead of objecting, take some step that implies his assent to or acquiescence in what his adversary has done."

In the same book, on page 362, the author says:

"As soon, therefore, as a pleading is filed, it is the duty of the opposite party to apply the proper test of its

sufficiency; and if he fail to apply such test, then its sufficiency is conceded. Hence, when a bill is filed, the defendant must test its sufficiency by a motion to dismiss, or by demurrer; when a demurrer or plea is filed, the complainant must test it by having it set down for argument; and when an answer is filed, the complainant must test its sufficiency by filing exceptions.''

The reference to testing an answer for insufficiency refers to a sworn answer, since exceptions to an answer for insufficiency will not lie where the oath is waived. *Sheppard* v. *Akers,* 1 Tenn. Chy., 327; *Smith* v. *Insurance Co.,* 2 Tenn. Chy., 604; 10 R. C. L., 449; 21 C. J., 487.

The sufficiency of new matter contained in the answer, and inserted for the purpose of setting up a substantive defense, cannot be raised by exceptions. *Lanum* v. *Steel,* 29 Tenn., 280; 10 R. C. L., 449; 21 C. J., 488.

If the substance of an answer is bad as a defense, it cannot be tested by a demurrer, but must be set down for hearing upon bill and answer. Gibson's Suits in Chancery, section 280; 10 R. C. L., 451-2; 21 C. J., 486.

In the cause under consideration cross-complainant could not set the cause down for hearing upon bill and answer, for the reason that the answer contained several valid defenses. This suggests a defect in our equity practice which should be cured by legislative enactment.

In some states, by statute, the validity of an answer, or any part thereof, may be tested by a demurrer. A better practice, perhaps, is that embraced in Federal Equity Rule 33, which provides as follows:

''Exceptions for insufficiency of an answer are abolished. But if an answer set up an affirmative defense, set-off, or counterclaim, the plaintiff may, upon five days'

notice, or such further time as the court may allow, test the sufficiency of the same by motion to strike out. If found insufficient but amendable the court may allow an amendment upon terms, or strike out the matter.''

█ In the present cause if cross-complainant desired a fuller statement as to the alleged false representations, he should have requested it, or taken some step indicating that he did not consider it sufficiently pleaded. Excepting to the evidence offered by cross-defendant as to false representations, because not based upon a valid pleading, would have placed cross-defendant upon notice, and afforded him an opportunity to amend his answer so as to make its averments more specific.

Upon the merits, we concur with the conclusions set forth in the opinion of the Court of Appeals. While the cause is a close one upon the facts, we feel that cross-defendant was overreached, and he and his wife were induced to sign the contract separately upon misleading representations made to them by the agents of the cross-complainant. These agents misled cross-complainant as to the attitude of his wife with regard to the purchase of the new car, and *vice versa.* If these agents had not obtained the signatures of these parties in the manner indicated, and before they got together, we do not believe the purchase would have been made. In their zeal to put over this deal these agents overstepped the bounds of fair dealing.

█ Having found that cross-complainant is in court with unclean hands, it would be repelled even though no charge of false representations was made in the answer. *Overton* v. *Lewis,* 152 Tenn., 500; *Sartain* v. *Dixie Coal & Iron Co.,* 150 Tenn., 649; 21 C. J., 183, 186.

There was no error in the decree of the Court of Appeals, and it will be affirmed with costs.